**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TERESA L. BARBER, individually, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>METLIFE GROUP, INC., a New York )<br>Corporation; METROPOLITAN LIFE )<br>INSURANCE COMPANY, a New York )<br>Corporation; METLIFE, INC., a )<br>Delaware Corporation; LONE STAR )<br>HOLDINGS, LLC, a Delaware Limited )<br>Liability Company; and LONE STAR )<br>OVERNIGHT, LP, a Texas Limited )<br>Partnership, )<br>)<br>Defendants. ) | Case No.: 10-CV-281-JHP-TLW |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**PROPOSED FINDINGS OF FACT**

**A. PARTIES INVOLVED**

1.  Plaintiff Teresa Barber (the "Plaintiff" or "Mrs. Barber") was the wife of the decedent Gary Barber (the "Decedent" or "Mr. Barber"), who was an employee of Lone Star at the time of his death and all relevant times. (A.R. M-00003; M-00066, M-00059).

2.  Lone Star is the Plan Administrator of the Lone Star Holding, LLC Employee Benefit Plan (the "Plan"). The Plan is an employee benefit plan which provides term life insurance coverage to employees of Lone Star who are eligible for such benefits. The Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (A.R. M-00003; M-00066, M-00059).

3.  Defendant MetLife Insurance Company ("MetLife") issued a group insurance policy to Defendant Lone Star, identified as MetLife Group Policy No. 113078-G, which funds

the term life insurance benefits under the Plan. The Plan designates MetLife as the Claims Administrator for the Plan, and designates to MetLife discretionary authority to determine whether an applicant is eligible for benefits under the Plan. (A.R. M-00003, M-00063).

**B. THE PLAN**

4. MetLife's discretion as Claims Administrator is set forth in the terms of the Plan:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

That discretion includes the ability to determine denials and appeals of any denials. (A.R. M-00063).

5. The Plan provides for two possible application periods: (1) when the employee is first hired, or (2) during an annual enrollment period. (A.R., p. M-00030).

6. The Plan defines a late request for supplemental coverage as one made more than thirty-one days after the employee first becomes eligible to apply for such coverage. (A.R. M-00036).

7. The Plan provides that for any request made beyond thirty-one days from the date the employee is first eligible to apply, evidence of insurability must be provided to MetLife by the employee. The evidence of insurability must also be accepted as satisfactory by MetLife. (A.R. M-00036).

8. "Evidence of insurability" is not a specifically-defined term in the Plan documents. (A.R. M-00001-00064, term used throughout).

### C. THE BARBERS' APPLICATION AND EVENTUAL CLAIM

9. Mr. Barber was hired by Lone Star as a new employee in April, 2002. He did not apply for supplemental coverage at that time. (A.R. M-00003).

10. On November 17, 2008, six years after he first became an employee of Lone Star, Mr. Barber requested supplemental life insurance coverage during the annual enrollment process. (A.R. M-00143-00144).

11. The Application named his wife, Teresa Barber, as the beneficiary of the requested supplemental insurance benefits, and requested $100,000 in supplemental life insurance coverage. (A.R. M-00143-00144).

12. Under the terms of the Plan, since he did not apply within thirty-one days of first becoming eligible, Mr. Barber's application for supplemental coverage was considered a late request and he was required to provide proof of insurability satisfactory to MetLife. (A.R. M-00036).

13. Additionally, the application form signed by Mr. Barber contained an acknowledgment in which Lone Star employees recognized that they could be required to provide evidence of insurability to MetLife in order to obtain coverage after the initial enrollment period had expired. (A.R. M-00145).

14. The form signed by Mr. Barber stated that coverage would not take effect for the employee until notice was received by the employee that MetLife had approved the applied-for coverage. (A.R. M-00145).

15. The form signed by Mr. Barber also acknowledged that he had reviewed all additional materials provided with the Application. (A.R., M-00099-00100).

16. At the time he applied for supplemental coverage, Mr. Barber had been diagnosed with Hepatitis C. (A.R. M-00129).

3

17. Mr. Barber did not provide any evidence of insurability to MetLife in connection with his late request for supplemental coverage. (A.R. M-00001-00164).

18. MetLife never notified Mr. Barber that supplemental coverage had been approved for him. (A.R. M-00001-00164).

19. Mr. Barber died of carcinoma of the liver on May 4, 2009. (A.R. M-00071).

20. Lone Star, as Plan Administrator, had erroneously deducted amounts for payment of supplemental coverage from Mr. Barber's paychecks from January 2009 through May 2009. The amounts deducted were fully refunded to Mrs. Barber by Lone Star.

21. On May 15, 2009, eleven days after Mr. Barber's death, Mrs. Barber submitted a Claimant's Statement to MetLife seeking benefits under the Plan as Mr. Barber's beneficiary. (A.R. M-00073-00074).

22. Also on May 15, 2009, Lone Star sent MetLife an Employer's Statement in connection with a claim by Mrs. Barber as beneficiary for basic life benefits in the amount of $25,000. (A.R. M-00068-00070). MetLife paid the claim for basic life benefits in the amount of $25,000.

23. On June 2, 2009, Lone Star sent MetLife another Employer's Statement in connection with a claim by Mrs. Barber as beneficiary for supplemental life benefits in the amount of $100,000. (A.R. M-00080-00082).

D. **METLIFE'S INITIAL DETERMINATION AND PLAINTIFF'S APPEAL**

23. After MetLife conducted a detailed review of the claim, the facts surrounding the claim, and the lack of required information, it denied Plaintiff's claim in a letter dated June 29, 2009. (A.R., M-00098).

24. The denial was based upon the lack of evidence of insurability as required under the Plan, because the application was considered a late request under the Plan terms. (A.R., p. M-00098).

25. The letter also advised Plaintiff of her rights under ERISA to appeal the denial of benefits. (A.R., M-00098).

26. Plaintiff appealed the adverse claim determination by MetLife on July 10, 2009. She did not claim that evidence of insurability was provided by Mr. Barber with his application for supplemental life insurance coverage. Instead, she asserted that MetLife had already been provided with Mr. Barber's health information via a Statement of Health ("SOH") form she had filled out when she applied for dependent coverage for Mr. Barber in January 2008 under her own employer's employee benefit plan (the "ONEOK Plan"). Plaintiff claimed this was sufficient under the Plan. (A.R., M-00099—00100).

27. The Statement of Health Form submitted pursuant to Plaintiff's ONEOK Plan was signed by Plaintiff on January 16, 2008, and by Mr. Barber on February 5, 2008. It disclosed that Mr. Barber had been diagnosed with Hepatitis C—a liver disease—and continued to live with the disease. (A.R., M-00128—00129).

28. MetLife had declined the application submitted through the ONEOK Plan due to Mr. Barber's diagnosis of Hepatitis C. (A.R., M-00134-00136).

29. On August 13, 2009, MetLife notified Mrs. Barber it was upholding its denial of supplemental life insurance benefits. MetLife explained it had re-confirmed that no evidence of insurability had been submitted by Mr. Barber, and therefore MetLife had not approved the application for supplemental life insurance coverage. It also confirmed the review of the

5

application submitted through the ONEOK Plan, and explained Mr. Barber's application had been denied there due to his history of Hepatitis C. (A.R., M-00134-00136).

30. Nine months after receiving the August 13, 2009 letter denying her appeal, on May 4, 2010, Plaintiff filed the instant action alleging wrongful denial of supplemental life insurance benefits.

## PROPOSED CONCLUSIONS OF LAW

### A. APPLICABLE STANDARD OF REVIEW

1. The Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

2. The Plan grants MetLife discretionary authority to interpret the Plan terms and to decide claims. Because the Plan expressly confers such authority, ERISA's arbitrary and capricious standard applies to this action. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *DeGrado v. Jefferson Pilot Fin. Ins. Co.,* 451 F.3d 1161, 1169 (10th Cir. 2006); *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1267-68 (10th Cir. 2002); *Metropolitan Life v. Glenn*; 128 S.Ct. 1117, 169 L.Ed.2d 845 (U.S. 2008).

3. The review by the Court of MetLife's determination in this case is limited to the 'administrative record,' the materials compiled by the administrator in the course of making his decision." *Hall v. Unum Life Ins. Co. of America*, 300 F.3d 1197, 1201 (10th Cir. 2002) (citing *Sandoval v. Aetna Life and Casualty Ins. Co.*, 967 F.2d 377, 380-82 (10th Cir. 1992)); *DeGrado v. Jefferson Pilot Fin. Ins. Co.,* 451 F.3d at 1169 (10th Cir. 2006); *Geddes v. United Staffing Alliance Employee Medical Plan,* 469 F.3d 919, 928 (10th Cir. 2006). The Court will conduct its

review based solely on the record before MetLife at the time the decision was made. *Kimber v. Thiokol Corp.*, 196 F.3d 1092 (10th Cir. 1999).

4.  MetLife's determination regarding benefits as the Claims Administrator will be upheld if it is supported by substantial evidence. Substantial evidence is evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker. According to the Tenth Circuit, substantial evidence requires "more than a scintilla but less than a preponderance of the evidence." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

5.  Where an ERISA claims administrator both evaluates claims and pays benefits, a structural conflict of interest exists. In evaluating the conflict of interest, the Court takes it into account along with all other relevant considerations and factors, reaching a result by weighing all factors together. *See Glenn*, 128 S.Ct. at 1117-18. This "combination of factors" approach is the appropriate standard of review in a case such as that at bar. It is reviews all relevant evidence in the administrative record, with appropriate weighting given to each item, and appropriate deference given to the administrator's decision. The previous "less deference" standard has no application to current ERISA cases.

6.  Review of the administrative record shows no evidence that would require the structural conflict of interest to be given any additional weight beyond any other factor.

7.  The Administrative Record establishes that MetLife's claim determination was based upon the documents and information presented to MetLife, as well as its reasonable evaluation of the information. It is entitled to the deference normally provided to the Claim Administrator.

   **B. THE DETERMINATION WAS NOT ARBITRARY AND CAPRICIOUS**

8. MetLife's determination denying claim benefits to Plaintiff was not arbitrary and capricious, but was reasonable and supported by substantial evidence in the Administrative Record.

9. The term "evidence of insurability," while not specifically defined in the Plan, is not ambiguous. It is not readily susceptible to more than one meaning, or prone to uncertainty as to its meaning. *See Admin. Comm. of Wal-Mart Assoc. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004).

10. When an ERISA plan administrator has authority to interpret the language of the Plan, and more than one interpretation is rational, the administrator may choose any rational alternative. *See Naugle v. O'Connell,* 833 F.2d 1391, 1396 (10th Cir. 1987).

11. Tenth Circuit law is clear that in interpreting a plan covered by ERISA, terms must be given their common and ordinary meaning as a reasonable person in the place of the plan participant, not the actual participant, would have understood the words to mean. *Blair v. Metro. Life Ins. Co*., 974 F.2d 1219, 1221 (10th Cir. 1992); *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1201-02 (10th Cir. 1992).

12. The Plan requirement that a plan participant making a late request for supplemental life benefits must provide "evidence of insurability" is not uncertain, ambiguous, or susceptible to more than one meaning when considered from the perspective of a reasonable Lone Star Plan participant. As interpreted by MetLife, the term means that a Plan participant must provide evidence of good health.

13. The interpretation of the Plan term "evidence of insurability" as meaning "evidence of good health" by MetLife is a rational and reasonable one.

14. The submission of an SOH does not by itself necessarily meet the Plan requirement of providing evidence of insurability.

15. The Administrative Record contains no documents indicating that Mr. Barber did submit evidence of insurability, or evidence of good health, to MetLife. Rather, the Administrative Record contains evidence that Mr. Barber was not in good health, but suffered from liver disease at the time he applied for supplemental coverage.

16. The SOH submitted by Mr. Barber in connection with a separate application under the ONEOK Plan—is not sufficient to constitute evidence of insurability for his application under the Lone Star Plan.

17. The SOH submitted by Mr. Barber in connection with a separate application under the ONEOK Plan actually led to a denial of benefits under the ONEOK Plan because it disclosed he was living with Hepatitis C, a liver disease.

18. Nothing in the Administrative Record shows MetLife ever advised Mr. Barber that it had accepted his application for supplemental coverage.

19. MetLife determined—and Plaintiff did not present evidence to the contrary—that under the Plan, Mr. Barber's application for supplemental life insurance benefits was made more than six years after he was initially hired. Under the Plan, this constitutes a late request. MetLife determined under the Plan that Mr. Barber must provide evidence of insurability satisfactory to MetLife. Mr. Barber did not provide evidence of insurability. Therefore, under the terms of the Plan, MetLife determined there is no coverage for supplemental life insurance benefits.

20. MetLife has shown it had a reasonable basis for its decision and the decision is supported by substantial evidence in the Administrative Record.

21. The Court therefore upholds MetLife's decision.

### C. THERE WAS NO BREACH OF FIDUCIARY DUTY BY LONE STAR

22. Plaintiff's Amended Complaint contains an allegation of breach of fiduciary duties against Lone Star, claiming such duties were breached "by failing to provide Teresa the benefits due under the terms of the Plan's supplemental life insurance." Since MetLife is the Claim Administrator with full discretion regarding denial or acceptance of claims, Lone Star cannot provide or fail to provide benefits under the Plan and the applicable ERISA law. Therefore, this claim against Lone Star is denied by the court.

IT IS SO ORDERED this 16th day of January, 2013.

James H. Payne
United States District Judge
Northern District of Oklahoma